UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Dawn Zanazanian, | Case No. 2:20-cv-01720-DJA |
| Plaintiff, | |
| v. | **Order** |
| Andrew Saul[1], Commissioner of Social Security, | |
| Defendants. | |

Before the Court is Plaintiff Dawn Zanazanian's motion for reversal or remand (ECF No. 21), the Commissioner's cross motion to affirm and response (ECF Nos. 25 and 26), and Plaintiff's reply (ECF No. 27). Because the Court finds that the Administrative Law Judge's ("ALJ") decisions were not supported by substantial evidence, it grants Plaintiff's motion for remand (ECF No. 21) and denies the Commissioner's cross motion to affirm (ECF No. 27). The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.   Background.**

   *A.   Procedural history.*

On March 9, 2016, Plaintiff applied for a period of disability, disability insurance benefits, and supplemental social security income, alleging disability with an onset date of May 19, 2015. (AR 394-96). The Commissioner initially denied Plaintiff's claim on January 3, 2017. (AR 319-23) The Commissioner denied reconsideration on February 1, 2017. (AR 319-23).

On July 31, 2019, Plaintiff testified in front of the ALJ (AR 258-83). Plaintiff claimed that she was unable to stand or sit for any length of time; that even after neck surgery, she still has the same symptoms as before; and that she has shooting pain down both her arms any time she

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security and substituted as a party.

tries to do laundry or care for herself. (AR 264-66). Plaintiff also testified that she is unable to turn her head right or left without triggering pain and that she has weakness in her upper and lower extremities, secondary to multiple bilateral knee surgeries and her shoulder impairments. (AR 267-68). Plaintiff testified that she experiences pain in her bilateral knees when she walks long distances and that she has to climb stairs one at a time. (AR 268-70).

Janice S. Hastert, MS also testified as a vocational expert witness. (AR 278-81). Ms. Hastert testified that a person consistent with Plaintiff's residual functional capacity ("RFC") could perform Plaintiff's past relevant work as a Billing Clerk and Telephone Operator as generally performed, but not as actually performed. (AR 279-80). The ALJ asked Ms. Hastert to then assume that an individual had the same limitations as Plaintiff, but added a limitation to only occasional handling, fingering, and feeling with her right upper extremity. (AR 280-81). Ms. Hastert testified that such an individual would be unable to perform the past relevant work and would not have any transferable skills to skilled or semi-skilled work at the sedentary level. (AR 281).

Plaintiff's counsel then asked Ms. Hastert to consider a hypothetical in which a person with the same limitations as Plaintiff would have to miss four or more days of work per month on a consistent basis. (AR 281). Ms. Hastert responded that there would be no competitive employment for such a person in the national economy. (AR 281). On August 20, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled because Plaintiff could perform her past relevant work. (AR 27-28). On September 16, 2020, Plaintiff commenced this action for judicial review under 42 U.S.C. § 405(g). (ECF No. 1).

**B.    The ALJ decision.**

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920. (AR 20-28). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 19, 2015. (AR 21). At step two, the ALJ found that Plaintiff has severe medically determinable impairments. (AR 21-23). At step three, the ALJ found that Plaintiff's impairment did not meet or medically equal the

criteria in the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 23).  In making this finding, the ALJ specifically considered Listings 1.02 and 1.04.  (AR 23).

At step four, the ALJ found that Plaintiff had an RFC to perform a modified range of sedentary work as defined in 20 C.F.R. § 404.1567(a).  (AR 23-27).  The ALJ found that Plaintiff can perform past relevant work as a Billing Clerk and Telephone Operator, as generally performed, because the work would not require the performance of work-related activities precluded by Plaintiff's RFC.  (AR 27-28).  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time from May 19, 2015 through the date of the decision.  (AR 28).

## II.   Standard.

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides."  The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

## III.    Disability evaluation process.

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  More specifically, the individual must provide "specific medical evidence" in support of her claim for disability.  20 C.F.R. § 404.1514.  If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy.  *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required.  *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(b).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit.  *Id*. § 404.1572(a)-(b).  If

the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the

individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

**IV.  Analysis and findings.**

   ***A.  The ALJ's physical RFC decision is not supported by substantial evidence.***

Plaintiff contends that the ALJ's physical RFC decision was not supported by substantial evidence because the ALJ gave too much weight to the state agency reviewing physician's decision and because the ALJ failed to further develop the record when deciding RFC. The Court disagrees with Plaintiff's first contention but agrees with the second.

   1.  <u>The ALJ properly weighed Dr. Sampat's opinion.</u>

Plaintiff contends that the ALJ gave too much weight to Dr. Sampat's—the state agency reviewing physician—opinion, which could not be substantial evidence. Plaintiff asserts that Dr. Sampat's opinion was stale because Dr. Sampat did not consider new evidence that Plaintiff submitted after Dr. Sampat reviewed the record on June 15, 2017. This evidence included an

MRI on April 17, 2018 showing moderate to severe multilevel degeneration, canal stenosis, and multilevel neuroforaminal stenosis.  (AR 899-900).  In August of 2018, Plaintiff also underwent an anterior cervical discectomy and fusion.  Plaintiff claims that the ALJ does not mention this procedure.

The Commissioner argues in response that Dr. Sampat's opinion was supported by the record and consultative examiner, Dr. Cabuluna's findings.  The Commissioner points out that there is no regulation or Ninth Circuit case law providing that the ALJ could not rely on Dr. Sampat's assessment because he did not review the entire record.  Rather, the Commissioner argues that there is no time limit imposed on the timeframe between when a consultant submits a report and the ALJ conducts a hearing and issues a decision.  The ALJ may rely on medical opinions that are consistent with the evidence, which the Commissioner argues, Dr. Sampat's opinion was.  For example, the Commissioner points out that Dr. Cabaluna noted in December of 2016 that Plaintiff's range of motion was relatively normal and that, while she exhibited pain at times, "she could handle sedentary work subject to certain sit/stand and postural imitations and that she did not need an assistive device to ambulate or more than standard breaks and lunch period for sufficient relief."  (AR 586-92).  Because Dr. Sampat's findings were consistent with Dr. Cabaluna, the Commissioner argues that the "ALJ reasonably gave [it] great weight." Plaintiff replies that, given the change in her medical impairment as revealed in her later submitted medical evidence, Dr. Sampat's opinions could not be substantial evidence.  She emphasizes that Dr. Sampat did not have the opportunity to review the MRI and records showing that Plaintiff underwent a cervical discectomy and fusion.

The Treating Physician Rule—inapplicable to cases filed on or after March 27, 2017[2]—provides that the opinion of a treating or examining source is given more weight than a non-treating or non-examining source.  *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010); *see Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).  *Stone v. Heckler* stands for the proposition that, if an ALJ ignores a treating physician's recent evaluation of a

---

[2] Plaintiff filed her action on March 9, 2016 (AR 394-96).

claimant's progressing limitations but considers an older opinion that does not show the progressing limitations, the ALJ's opinion is not supported by substantial evidence. *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985).  There, the ALJ did not even mention the claimant's treating physician's report—made six days before the hearing—indicating that the claimant's foot degeneration had progressed, making it impossible for the claimant to be gainfully employed in a position requiring the use of his lower extremities. *See id.* at 532-33.  The ALJ did, however, consider older medical reports to find that the claimant had the RFC to perform sedentary work. *See id.*  The Ninth Circuit reversed, explaining that,

> The ALJ's opinion in this case fails to even mention Dr. Maurer's final report, much less make findings setting forth reasons for disregarding it.  We can find no substantial evidence in the record that would serve as a basis for disregarding it. Accordingly, we conclude that the ALJ's determination that Stone had the residual functional capacity to perform sedentary work is not based on substantial evidence.

*Id.*

Here, the ALJ appropriately gave Dr. Sampat's opinion "significant weight because it is consistent with the objective findings in the record."  In particular, the ALJ noted that Dr. Sampat's opinion considered that the "claimant has degeneration [in her]…cervical and lumbar spine…" (AR 27).  Plaintiff argues, however, that the ALJ should not have given Dr. Sampat's opinion significant weight because Dr. Sampat did not consider her MRI showing degeneration and stenosis and Plaintiff's surgeries to combat these issues.  But these records are distinguishable from those in *Stone*.  Plaintiff's records are unlike the records in *Stone*, which indicated that the claimant's degeneration had progressed, and that the claimant could not be gainfully employed. Instead, Plaintiff's records, while they show that she experienced degeneration, show that she obtained treatment for that degeneration.  And Plaintiff does not argue that the records contain an opinion that Plaintiff could not obtain gainful employment like the records in *Stone.*  Nor does Plaintiff argue that her treatment was unsuccessful or made her symptoms worse.  To the contrary, her discharge records indicate that she was to no longer take morphine or oxycodone

(AR 1084). The day before she was discharged, Plaintiff's records indicate that she was able to ambulate thirty feet without an assistive device and that her gate was slow but steady. (AR 1424).

Additionally, the Commissioner points to multiple points in the record and Dr. Cabuluna's opinion with which Dr. Sampat's opinion is consistent. The Court is not persuaded that the new evidence Plaintiff submits—her MRI and her surgery—show that Dr. Sampat's opinion is inconsistent with the record as a whole. Nor does the Court find that the fact that the ALJ did not mention the surgery means that his decision on Plaintiff's RFC was not supported by substantial evidence.

2. <u>The ALJ erred by not further developing the record.</u>

Plaintiff asserts that the ALJ's failed to fully develop the record by arranging for updated consultative exams or through a medical expert. Plaintiff argues that the ALJ improperly substituted his opinion for that of a physician when he found that

> [B]ased on evidence received at the hearing level, the [ALJ] further limited the claimant's ability to tolerate postural functions such as crouching, kneeling, or crawling, and in her ability to lift more than ten pounds both frequently and occasionally.

(AR 27).

The Commissioner responds that the ALJ's physical RFC is supported by the record as a whole, such that the obligation to develop the record was not triggered. Specifically, Plaintiff's treatment notes were unremarkable and Plaintiff self-reported that she could perform the activities of daily living. Additionally, the ALJ was under no further obligation to develop the record because it was neither ambiguous nor inadequate to evaluate Plaintiff's RFC. In reply, Plaintiff reasserts that the ALJ impermissibly drew his own conclusion.

The obligation to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for a proper evaluation of the evidence. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). "It is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2011). In *Boh v. Saul*, this court considered a claimant's contention that the ALJ should not have evaluated new medical evidence without the benefit of new medical

opinions interpreting it.  *See Boh v. Saul*, No. 2:20-cv-00350-EJY, 2011 WL 2772554, at *11 (D. Nev. July 2, 2021).  The "new evidence" that the ALJ considered consisted of evidence that the Plaintiff,

> underwent shoulder surgery, obtained updated objective imaging of her cervical spine and left elbow, received a new diagnosis of left elbow epicondylitis, and underwent several rounds of injection therapy for her back impairments that were not wholly successful in alleviating her symptoms.

*Id.*  But the Court found that it was within the ALJ's purview to note that a clinician found Plaintiff's x-rays to show only "mild" or "moderate" degeneration or other similar limitations because "that is exactly what the ALJ must do to determine whether medical evidence supports…a particular RFC."  *Id.*

Here, the ALJ should have further developed the record.  Unlike the ALJ in *Boh*, who relied on specific evidence in determining that the claimant had only mild or moderate degeneration, it is unclear which evidence the ALJ relies on when deciding that Plaintiff's RFC is more limited.  (AR 27).  The ALJ asserts, without citing any records, that "based on evidence received at the hearing level, the undersigned further limited the claimant's ability to tolerate postural functions…"  It appears that the ALJ relied on Plaintiff's testimony about her post-surgery pain and the evidence Plaintiff submitted showing her MRI and surgery after the hearing.  But the ALJ does not mention the surgery or the implications of Plaintiff's continuing pain treatments.  Without knowing which evidence the ALJ used to limit Plaintiff's RFC, the Court cannot determine whether the ALJ acted within his purview.  Unlike the ALJ in *Boh*, who reviewed x-rays to support the RFC, here, it is unclear what the ALJ used to support the additional limits he placed on the RFC.  The ALJ thus should have further developed the record and must further develop the record with respect to Plaintiff's RFC on remand.

**B.     *The ALJ's mental RFC decision is supported by substantial evidence.***

Plaintiff argues that that the ALJ's mental RFC decision was not supported by substantial evidence because the ALJ did not pose hypotheticals to the vocational expert about Plaintiff's mild limits in concentration, persistence, and pace.  Plaintiff asserts that this means the vocational

expert's testimony has no evidentiary value. In response, the Commissioner contends that the ALJ's mental RFC decision is supported because the ALJ did not need to ask the vocational expert mental hypotheticals because Plaintiff's mental conditions are not severe and impose no significant limitations on her ability to work. The Commissioner argues that the ALJ relied on Dr. Jacob's and Dr. Gallucci's—state agency psychological consultants—opinions and that Plaintiff does not dispute that her mental impairments are non-severe. In reply, Plaintiff argues that her mental impairments, although mild, greatly impact her past relevant work and that, without vocational expert testimony on this topic, the ALJ's decision was not a harmless error.

A hypothetical posed by an ALJ to a vocational expert need only contain the limitations that the ALJ finds credible and supported by substantial evidence on the record. *See Bayliss*, 427 F.3d at 2117-18. *Embrey v. Bowen* stands for the proposition that, when a hypothetical is not supported by the record, and contradicted by the claimant's and a physician's testimony, the vocational expert's opinion has no evidentiary value and cannot support the ALJ's decision. *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). There, the hypothetical the ALJ posed to the vocational expert assumed that the claimant could alternate between sitting and standing for a full eight-hour workday, which assumption had no support in the record and was flatly contradicted by the claimant's testimony and the claimant's treating physician. *See id*. The court concluded that, because the ALJ had no specific and legitimate reasons for rejecting the treating physician's findings, and should have included the findings in the hypothetical, that the vocational expert's opinion had no evidentiary value. *See id.*

Here, the ALJ's mental RFC determination is supported by substantial evidence. The Commissioner argues that the ALJ did not need to include Plaintiff's non-severe mental limitations into the hypotheticals he posed to the vocational expert. But, unlike in *Embrey*, Plaintiff does not point to any contradictory points in the record to support her claim that the hypotheticals that the ALJ did pose were not supported by the record. To the contrary, the Commissioner points to parts of the record and psychological consultant opinions consistent with his decision not to include mental impairments in the hypothetical. The ALJ's hypotheticals did not reject any findings but relied on the findings of Dr. Jacobs and Dr. Galluci that Plaintiff's

mental impairments were non-severe.  Finally, Plaintiff's counsel had the opportunity to raise these impairments at the hearing level when he questioned the vocational expert but did not.  The ALJ's mental RFC decision is supported by substantial evidence.

### C. The ALJ did not give clear and convincing reasons for discounting Plaintiff's subjective symptoms.

Plaintiff contests that the ALJ did not give clear and convincing reasons for discounting Plaintiff's subjective complaints, but rather, improperly relied on the discrepancies between "conservative" treatment, Plaintiff's testimony about her daily activity, and Plaintiff's subjective complaints.  Plaintiff claims that her treatment was not conservative and that her daily activity does not mean that she can perform her past relevant work.  In response, the Commissioner argues that Plaintiff's subjective complaints were inconsistent with the record as a whole.  The ALJ looked at each of Plaintiff's impairments and pointed to contradicting evidence.  The Commissioner argues that the ALJ properly found Plaintiff's treatment to be conservative and that Plaintiff's reports of her daily life activities to be more active than if her complaints were consistent.  Plaintiff replies that the ALJ failed to draw a nexus between the daily activities to which she testified and the activities she would have to perform at work.  Plaintiff claims that her treatment was not conservative and that the ALJ failed to say what further treatment Plaintiff needed to undergo to substantiate her claims.

While an ALJ must consider a plaintiff's representations about her symptoms and limitations, her statements about her "pain or other symptoms will not alone establish that" she is disabled.  20 C.F.R. § 404.1529(a).  In fact, an "ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Act]."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  However, absent affirmative evidence that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing.  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).  Specifically, the ALJ must state why the testimony is unpersuasive and point to what testimony or evidence undermines the claimant's testimony.  *See, e.g., Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (upholding ALJ's credibility determination when he pointed out

numerous lab results that contradicted his subjective complaints); *see also Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006) (ALJ required to provide a "narrative discussion" and state specific evidence in the record supporting an adverse credibility finding).

The ALJ "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. This is because the lack of an objective medical basis is just one factor in evaluating the credibility of a claimant's testimony and complaints. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). Moreover, the Court notes that SSR 16-3 clarified that ALJ no longer has to make credibility findings, but rather, evaluate the extent to which the alleged functional limitations and restrictions due to pain and other symptoms are consistent with the other evidence. If "evidence can support either affirming or reversing the ALJ's decision," the Court may not substitute its judgment for that of the ALJ's. *Robbins*, 466 F.3d at 882.

Here, the Court finds that the ALJ did not give clear and convincing reasons for discounting Plaintiff's subjective complaints of pain. The ALJ noted the medical treatment in the record that conflicts with Plaintiff's claim of disabling level pain and symptoms. (AR 25-26). But the ALJ only demonstrated that Plaintiff's course of treatment was conservative with respect to her knee, not with respect to her neck and back. (AR 25-26). The ALJ noted that Plaintiff's allegations of total disability were out of proportion with the medical evidence and other evidence of record, but also noted that the Plaintiff continued to receive treatment from pain specialists for her shoulder, knee, neck, and extremity pain. (AR 26). Moreover, the ALJ relied primarily on a 2016 exam with relatively normal findings, while more recent MRIs and examinations indicated more limited ranges of motion. (AR 25).

Although the ALJ did highlight Plaintiff's inconsistent statements that undermine the credibility of her claims, the ALJ appeared to focus on Plaintiff's statements about her ability to shop, do laundry, clean the bathroom, feed her pets, and perform personal care tasks independently. (AR 26). These tasks do not rise to the level of inconsistent statements that would warrant discrediting her subjective testimony. *See Fair*, 885 F.2d at 603 (explaining that "many home activities are not easily transferrable to what may be the more grueling environment

of the workplace, where it might be impossible to periodically rest or take medication"). As the ALJ noted, Plaintiff's husband often cares for her, she testified that she can only walk for about thirty minutes when shopping, that she can perform self-care tasks, but that she experiences shooting pain while doing so, and that although she can do the laundry, she only folds items while resting on ice. (AR 265-66, 276-77). Plaintiff's more-recent pain treatment notes also indicate a lessened range of motion and increased pain, especially in her right shoulder and neck, necessitating narcotics. (AR 903-68). After a careful review of the ALJ's evaluation of Plaintiff's alleged limitations, pain, and other symptoms, the Court finds that the ALJ did not comply with SR 16-3 and the Ninth Circuit standard of clear and convincing evidence. *See Burch*, 400 F.3d at 679. This is not a harmless error because Plaintiff's testimony supports finding a more restrictive RFC than that which was assigned. Therefore, the Court concludes that the ALJ must also address the subjective testimony evaluation upon remand.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to remand or reverse (ECF No. 21) is **granted** subject to the modification that it be remanded for further proceedings consistent with the terms of this Order.

**IT IS FURTHER ORDERED** that the Commissioner's cross motion to affirm (ECF No. 25) is **denied**. The Clerk is kindly directed to enter judgment accordingly and close the case.

DATED: September 8, 2021

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE